## UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| BRAD SHAFFER, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>       v.<br><br><br>QFRM HOLDINGS LLC; QFRM DEV IN LLC; QFRM 3 LLC; and DOES 1 to 25,<br><br>                    Defendants. | Case No. 1:23-cv-321<br><br><br>**NATIONWIDE CLASS ACTION COMPLAINT** |

## NATIONWIDE CLASS ACTION COMPLAINT

COMES NOW, Plaintiff BRAD SHAFFER ("Plaintiff"), on behalf of himself and all others similarly situated, and asserts as follows:

## INTRODUCTION

1.      Plaintiff, a person with a mobility disability who use a wheelchair for mobility, brings this action individually and on behalf of all others similarly situated against Defendants, asserting violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"), and its implementing regulations. Defendants QFRM HOLDINGS LLC; QFRM DEV IN LLC; QFRM 3 LLC, and DOES 1 through 25 (collectively, "Defendants") collectively own, lease, and/or operate at least seventy-nine (79) Wendy's restaurants in the states of Indiana and Florida. Plaintiff's claims arise from his own experience with excessive sloping conditions in purportedly accessible parking spaces, access aisles, and curb ramps ("Parking Area" or "Parking Areas") at places of public accommodation owned, operated, controlled, and/or leased by

Defendants ("Defendants' facilities"), and from site investigations at five (5) of Defendants' facilities also finding excessive sloping conditions.

2.     Plaintiff asserts that these excessive sloping conditions persist in part as a result of Defendants' existing but inadequate internal maintenance procedure, which fails to ensure compliance with the sloping requirements of the ADA's implementing regulations. *See* 28 C.F.R. §§ 36.101 *et seq*.

3.     The ADA expressly authorizes the injunctive relief aimed at modification of **existing** policies, practices, or procedures that Plaintiff seeks in this action. In relevant part, the ADA states:

> In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities. … Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy…

42 U.S.C. § 12188(a)(2).

4.     Based on the extensive factual investigation performed by Plaintiff's investigators, Plaintiff believes and therefore asserts that numerous additional facilities owned, controlled, and/or operated by Defendants have Parking Areas that are, or have become, inaccessible to individuals who rely on wheelchairs for mobility due to excessive sloping, demonstrating that Defendants' existing internal maintenance procedure (discussed at ¶¶ 20-25 below) is inadequate and must be modified. 42 U.S.C. § 12188(a)(2).

5.     Plaintiff brings this action individually and on behalf of all other similarly situated wheelchair users to compel Defendants to (i) remediate all access barriers within the Parking Areas of their facilities, and (ii) modify their existing policies to ensure that their facilities comply with the ADA's implementing regulations' excessive sloping requirements. 28 C.F.R. §§ 36.101 *et seq*.

6.      Consistent with 42 U.S.C. § 12188(a)(2), Plaintiff seeks a permanent injunction requiring that:

    a.  Defendants remediate excessive sloping within the Parking Areas at Defendants' facilities, consistent with the ADA's implementing regulations;

    b.  Defendants modify their existing maintenance policy to ensure that the excessive sloping conditions within the Parking Areas at Defendants' facilities do not reoccur; and

    c.  Plaintiff's representatives shall monitor Defendants' facilities to ensure that the injunctive relief ordered pursuant to Paragraph 6.a. and 6.b. has been implemented and will remain in place.

7.      Plaintiff's claims for permanent injunctive relief are asserted as class claims pursuant to Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) was specifically intended to be utilized in civil rights cases where the Plaintiff seeks injunctive relief for his or her own benefit and the benefit of a class of similarly situated individuals. To that end, the note to the 1996 amendment to Rule 23 states:

> Subdivision(b)(2).  This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate . . .. Illustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.

## PARTIES

8.      Plaintiff Brad Shaffer is, and at all times relevant hereto has been, a resident of Waldron, Indiana in Shelby County. Plaintiff has utilized a wheelchair for five years due to injuries and complications from spastic paraplegia. As a result, he uses a wheelchair for mobility.

9.      Plaintiff is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq.*

10.     Defendant QFRM HOLDINGS LLC is, and at all times relevant hereto has been, a Florida limited liability company, doing business in Indiana, as the owner, lessee, and/or operator of dozens of Wendy's restaurants in those states. Defendant QFRM HOLDINGS LLC's principal place of business is located at 6441 South Chickasaw Road Trail, Suite 334, Orlando, Florida, 32829.

11.     Defendant QFRM DEV IN LLC is, and at all times relevant hereto has been, an Indiana limited liability company, doing business in Indiana, as the owner, lessee, and/or operator of dozens of Wendy's restaurants in Indiana. Defendant QFRM DEV IN LLC's principal place of business is located at 6441 South Chickasaw Road Trail, Suite 334, Orlando, Florida, 32829.

12.     Defendant QFRM 3 LLC is, and at all times relevant hereto has been, an Indiana limited liability company, doing business in Indiana, as the owner, lessee, and/or operator of dozens of Wendy's restaurants in Indiana. Defendant QFRM 3 LLC's principal place of business is located at 6441 South Chickasaw Road Trail, Suite 334, Orlando, Florida, 32829.

13.     The true names and capacities, whether individual, corporate, associate, or otherwise of the Defendants named herein as DOES 1 through 25, are unknown to Plaintiff at this time. Plaintiff will amend this Complaint to assert their true names and capacities when known. Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously-named Defendants is responsible in some manner for the occurrences alleged in this Complaint.

14.     Plaintiff asserts that Defendants, including DOE Defendants, and each of them at all times mentioned in this Complaint were the alter egos, affiliates, agents and/or employees and/or employers of their Co-Defendants, under shared management, ownership, and common control of each other, and part of a single Franchise Group, and in doing the things alleged in this Complaint were acting within the course of such agency, affiliation, shared management,

ownership, control, and/or employment and with the permission and consent of their Co-Defendants.

15.     Plaintiff is further informed and believes, and based thereon alleges, that Defendants collectively own, lease, and/or operate seventy-nine (79) Wendy's restaurants in the states of Indiana and Florida as described herein.

16.     Defendants' facilities are places of public accommodation as defined in 42 U.S.C. §12181(7) and are therefore subject to the requirements of the ADA.

## FACTUAL ASSERTIONS

### Plaintiff Has Been Denied Full and Equal Access to Defendants' Facilities

17.     Plaintiff visited Defendants' facilities located at 4322 East Southport Road, Indianapolis, Indiana, 46237, on January 29, 2023, where he experienced unnecessary difficulty and risk of physical harm exiting and entering his vehicle and navigating the facilities. Plaintiff needed to exercise extra care to avoid falling and to safely traverse the area, due to excessive slopes in the purportedly accessible Parking Areas, as set forth in more detail below.

18.     Despite this difficulty and risk, Plaintiff plans to return to Defendants' facilities. Plaintiff often travels to the area for a variety of reasons. On January 29, 2023, Plaintiff traveled to the nearby area to grocery shop at Meijer. Plaintiff and his wife prefer to grocery shop at Meijer when possible due to their large selection of produce. Plaintiff also travels to the area at least five times per month to attend doctor appointments and visit friends. He often stops at Wendy's during these trips due the convenience of the location and his preference for his customized order of cheeseburgers with pickles. Plaintiff intends to dine at Defendants' East Southport Road facility during his visits to the area. Furthermore, Plaintiff intends to return to Defendants' facility to ascertain whether it remains in violation of the ADA.

19.     As a result of Defendants' non-compliance with the ADA, Plaintiff's ability to access and safely use Defendants' facilities has been significantly impeded and Plaintiff will be deterred from returning to and fully and safely accessing Defendants' facilities due to the discrimination he has previously encountered there.

**Defendants Repeatedly Deny Individuals with Disabilities**

**Full and Equal Access to Defendants' Facilities**

20.     As the owner and/or operator of their facilities, Defendants employ centralized policies, practices, or procedures with regard to the alteration, maintenance, and operation of their facilities.

21.     Plaintiff is informed and believes, and based thereon alleges, that as Wendy's franchisees pursuant to franchise agreements, Defendants utilize an Operations Standards Manual (the "Manual") issued by the franchisor, and are required to follow all of the manual's instructions, requirements, standards, specifications, and procedures at each of their locations, including those setting further management, administration, and maintenance policies, practices, and procedures related to "Daily Outside Maintenance." Plaintiff is further informed and believes that pursuant to the franchise agreements, Defendants are required to maintain the restaurant buildings, drive-thrus, parking lots, and landscaped areas at each individual location in conformance with the specifications set forth in the Manual. Additionally, Plaintiff is informed and believes, and based thereon alleges, that the Wendy's franchise agreements require remodeling, redecoration, structural changes, and modifications to the restaurants once every ten (10) years.

22.     Plaintiff is further informed and believes that pursuant to the franchise agreements, Defendants are required to maintain the restaurant buildings, drive-thrus, parking lots, and landscaped areas at each individual location in conformance with the requirements of the ADA

and the regulations promulgated thereunder, and to maintain, repair, and/or replace the parking lot, curbs, driveways, and sidewalks on the leased property, as described in the Manual.

23.     Plaintiff is informed and believes that pursuant to the franchise agreement, Defendants are required to enter into lease agreements containing specific terms setting forth, among other things, Defendants' obligations to comply with the requirements of the ADA and the regulations promulgated thereunder, and to maintain, repair, and/or replace the parking lot, curbs, driveways, and sidewalks on the leased property. Plaintiff is further informed and believes, and based thereon alleges, that Defendants have entered into sale-leaseback agreements at several restaurants that are "absolute NNN" or "zero NNN" in nature—for a period of twenty years—meaning the lessee has absolute responsibility for maintaining all the features of the property and the landlord has no responsibility for such maintenance.

24.     Plaintiff is further informed and believes, and based thereon alleges, that pursuant to the franchise agreements, Defendants are required to designate an "Approved Operator" that supervises the operation of Defendants' restaurants within designated market areas. Due to the high number of locations and geographic distances, Defendants manage compliance with their centralized policies, practices, or procedures concerning their daily outside maintenance obligations, and obligations to maintain, repair, and/or replace features within their Parking Areas, through a Director of Operations, who supervises Area Directors or Regional Managers, who in turn directly supervise District or General Managers, and then individual restaurant managers. Plaintiff is informed and believes that these positions collectively constitute the "Approved Operator" charged with overseeing operations of Defendants' restaurants for compliance with Wendy's policies through regular and complete inspections of Defendants' restaurants.

25.     Defendants' centralized maintenance and operational policies, practices, or procedures have systematically and routinely resulted in excessive sloping conditions in the Parking Areas of Defendants' facilities, in violation of the ADA and its implementing regulations.

26.     On Plaintiff's behalf, investigators examined multiple locations that Plaintiff is informed and believes are owned, controlled, and/or operated by Defendants, and found the following violations which are illustrative of the fact the Defendants' existing policies, practices, or procedures are discriminatory, unreasonable, inadequate, and routinely result in excessive sloping conditions in the parking spaces, accessible routes and curb ramps:

a.   4322 East Southport Road, Indianapolis, Indiana 46237

   i.   The parking surface of one or more purportedly accessible parking spaces and access aisles within the Parking Area had slopes exceeding 2.1%[1].

b.   1606 Shadeland Avenue, Indianapolis, Indiana 46219

   i.   The purportedly accessible curb ramp located on the route to the building entrance had a flare exceeding 10.0%[2].

c.   5699 Georgetown Road Indianapolis, Indiana 46254

   i.   The parking surface of one or more purportedly accessible parking spaces and access aisles within the Parking Area had slopes exceeding 2.1%;

   ii.  The purportedly accessible curb ramp located on the route to the building entrance had a flare exceeding 10.0%.

---

[1] Pursuant to the ADAAG 2010 Standards, parking spaces or access aisles may not have slopes steeper than 1:48, i.e., 2.1%. *See,* 36 C.F.R. part 1191, § 502.4. The 2010 Standards continued the 1991 Standards without change. *See,* Appendix D to 28 C.F.R. Part 36, § 4.6.3.

[2] The 2010 Standards at §§ 405.2 and 406.1 set the maximum threshold for ramp running slopes at not steeper than 1:12, i.e., 8.3%, and limit curb ramp flares to not steeper than 1:10 i.e., 10%. The 2010 Standards continued the 1991 Standards without change. *See,* Appendix D to 28 C.F.R. Part 36, § 4.7.5, §4.8.2.

    d.  6025 West 10th Street Indianapolis, Indiana 46224

        i.   The purportedly accessible curb ramp located on the route to the building entrance had a flare exceeding 10.0%.

    e.  5201 East US Highway 36 Avon, Indiana 46123

        i.   The purportedly accessible curb ramp located on the route to the building entrance had a flare exceeding 10.0%.

27.    As evidenced by the widespread excessive sloping conditions present in the Parking Areas of Defendants' facilities, absent a change in Defendants' existing procedure, excessive sloping conditions will continue to reoccur in Defendants' facilities even after they have been remediated.

### JURISDICTION AND VENUE

28.    This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

29.    Plaintiff's claims asserted herein arose in this judicial district, and Defendants do substantial business in this judicial district.

30.    Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

### CLASS ASSERTIONS

31.    Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2) on behalf of himself and the following nationwide class:

> All wheelchair users with qualified mobility disabilities who encountered accessibility barriers within the Parking Areas of any QFRM HOLDINGS LLC; QFRM DEV IN LLC; QFRM 3 LLC; and DOES 1 to 25 location.

32.    <u>Numerosity</u>: The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the

respective class members through this class action will benefit both the parties and this Court and will facilitate judicial economy.

33.     <u>Typicality</u>: Plaintiff's claims are typical of the claims of the members of the class. The claims of Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

34.     <u>Common Questions of Fact and Law</u>: There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendants' facilities and/or services due to Defendants' failure to make their facilities fully accessible and independently usable as above described.

35.     <u>Adequacy of Representation</u>: Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class members. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class, and he has no interests antagonistic to the members of the class. Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

36.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the class as a whole.

## **SUBSTANTIVE VIOLATION**

## **VIOLATION OF THE ADA, TITLE III**

### **[42 U.S.C. §§ 12101, *et seq.*]**

### **(Against all Defendants)**

37.     Plaintiff restates each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth herein.

38.     At all times relevant to this action, Plaintiff has been substantially limited in the major life activity of mobility. Accordingly, he is an individual with a disability defined by the ADA, 42 U.S.C. § 12102(2).

39.     Defendants own, lease, and/or operate restaurants that are places of public accommodation as defined under Title III of the ADA. 42 U.S.C. § 12181(7)(F).

40.     Plaintiff is informed and believes, and based thereon asserts, that Defendants' facilities were altered, designed, or constructed after the effective date of the ADA.

41.     The ADA and the franchise agreements require the accessible features of Defendants' facilities, which include Parking Areas of their facilities, to be maintained so that they are readily accessible to and usable by individuals with mobility disabilities.

42.     The architectural barriers described above demonstrate that Defendants' facilities were not constructed or altered in a manner that caused them to be readily accessible to and usable by individuals who use wheelchairs in the first instance and/or after that were not maintained or operated to ensure that they remained accessible to and usable by individuals who use wheelchairs.

43.     Furthermore, the architectural barriers described above demonstrate that Defendants have failed to remove barriers as required by 42 U.S.C. § 12182(b)(2)(A)(iv).

44.     Defendants' repeated and systemic failures to remove architectural barriers, to maintain the accessible features of their facilities, and/or modify their existing procedures to ensure compliance with the sloping requirements of the ADA's implementing regulations once constructed constitute unlawful discrimination on the basis of a disability in violation of Title III of the ADA.

45.    Defendants' conduct is ongoing and continuous, and Defendants' conduct has harmed Plaintiff.

46.    Unless Defendants are restrained from continuing their ongoing and continuous course of conduct, Defendants will continue to violate the ADA and inflict injury upon Plaintiff and the class.

47.    Given that Defendants have not complied with the ADA's requirements to make Defendants' facilities fully accessible to, and independently usable by, individuals who use wheelchairs, Plaintiff invokes his statutory rights to declaratory and prospective injunctive relief, as well as costs and attorneys' fees.

## PRAYER FOR DECLARATORY JUDGMENT AND PROSPECTIVE INJUNCTIVE RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the members of the Class, prays for:

a.    A declaratory judgment that Defendants are in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendants' facilities, as described above, are not fully accessible to, and independently usable by, individuals who use wheelchairs;

b.    A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.501(b) that (i) directs Defendants to take all steps necessary to remove the architectural barriers described above and to bring their facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the facilities are fully accessible to, and independently usable by, individuals who use wheelchairs; (ii)  directs Defendants to modify their existing procedures to prevent the reoccurrence of excessive sloping conditions in the Parking Areas of their facilities post-remediation; and (iii) directs that Plaintiff shall monitor Defendants' facilities to ensure that the injunctive relief ordered above remains in place.

c.    An Order certifying the class proposed by Plaintiff, naming Plaintiff as class representative, and appointing his counsel as class counsel;

d.    Payment of costs of suit;

e.     Payment of reasonable attorneys' fees pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505; and

f.     The provision of whatever other relief the Court deems just, equitable, and appropriate.

Dated:  February 21, 2023                          Respectfully Submitted,

                                                  */s/ Benjamin J. Sweet*
                                                  Benjamin J. Sweet
                                                  **NYE, STIRLING, HALE, MILLER & SWEET, LLP**
                                                  1145 Bower Hill Road, Suite 104
                                                  Pittsburgh, PA 15243
                                                  Phone: 412-857-5350
                                                  ben@nshmlaw.com


                                                  Jordan T. Porter
                                                  **NYE, STIRLING, HALE, MILLER & SWEET, LLP**
                                                  33 West Mission Street, Suite 201
                                                  Santa Barbara, CA 93101
                                                  Phone: 805-963-2345
                                                  jordan@nshmlaw.com


                                                  *Attorneys for Plaintiff and the Class*